(No. 65606.— ▮▮▮▮)

THE BOARD OF EDUCATION OF COMMUNITY SCHOOL DISTRICT No. 1, COLES COUNTY, Appellant, v. JEFFREY EARLE COMPTON et al., Appellees (Illinois Educational Labor Relations Board, Intervenor-Appellee).

*Opinion filed June 20, 1988.*

Brian A. Braun and S. Jeff Funk, of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for appellant.

Gregory J. Malovance, of Winston & Strawn, of Chicago, and Ralph H. Loewenstein, of Drach & Deffenbaugh, P.C., of Springfield, for appellees.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, Imelda R. Terrazino, Assistant Attorney General, and Randi Hammer Abramsky, of the Illinois Educational Labor Relations Board, all of Chicago, of counsel), for intervenor-appellee.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for *amicus curiae* Illinois Federation of Teachers.

JUSTICE CLARK delivered the opinion of the court:

The sole question on this appeal is whether the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1701 *et seq.*) divests the circuit courts of jurisdiction to vacate or enforce arbitration awards in public education. We answer this question in the affirmative.

The appellant is the board of education of Community School District No. 1, Coles County. The appellees are Jeffrey Earle Compton, the Charleston Education Association, and the Illinois Educational Labor Relations Board (Board). The circuit court of Coles County granted judgment for the appellant, and vacated an arbitrator's award in favor of the appellees. The appellate court reversed, holding that the circuit court lacked jurisdiction over the arbitration award. (157 Ill. App. 3d 439.) We granted the appellant's petition for leave to appeal. 107 Ill. 2d R. 315.

The appellee Compton was employed by the appellant as a nontenured teacher. The second appellee, the Charleston Education Association, is his exclusive bargaining agent. The appellant terminated Compton's employment at the end of the 1983-84 school year, allegedly in violation of the collective-bargaining agreement between the appellant and the Association. Under the agreement, the appellant recognized the appellee Association as the exclusive bargaining representative of District No. 1's certified teaching personnel. The agreement provided certain procedures for the evaluation and termination of teachers. It also provided a grievance-arbitration procedure for resolving disputes concerning alleged violations of the agreement. Following Compton's dismissal, Compton and the Association brought a grievance against the appellant.

The grievance was submitted to binding arbitration under the agreement and the arbitrator ruled in favor of the appellees, ordering Compton reinstated with full back wages and other benefits. The appellant school district then filed a petition in the circuit court to vacate the arbitrator's award. The appellees cross-petitioned to confirm the award. After both parties moved for summary judgment, the circuit court granted judgment for the appellant and vacated the award. The appellees then

moved for reconsideration, and the appellee Illinois Educational Labor Relations Board was allowed to intervene. Upon reconsideration the circuit court again ruled in favor of the appellant.

The appellate court reversed the circuit court, holding that the circuit court lacked jurisdiction to vacate or enforce an arbitration award because original jurisdiction over educational arbitration awards belonged exclusively to the Board. (157 Ill. App. 3d 439.) One judge on the appellate panel filed a special concurrence, noting that the court's decision might in certain situations "lead to disruption in public education," but concluding that "fine tuning" of the legislation was the responsibility of the General Assembly. (157 Ill. App. 3d at 445 (Lund, J., specially concurring).) The third judge on the panel dissented, noting that certain issues arising from arbitration might, under the majority's interpretation, be rendered unreviewable. (157 Ill. App. 3d at 445 (Green, J., dissenting).) The split in this case reflects differences on this issue among other panels of the appellate court. (Compare *Board of Trustees of Community Colleges District No. 508 v. Cook County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617 (holding that circuit courts retain jurisdiction over educational arbitration awards), and *Board of Education of Rockford School District No. 205 v. Rockford Education Association* (1986), 150 Ill. App. 3d 198 (same), with *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527 (holding that circuit courts lack jurisdiction over educational arbitration awards).) We granted the appellant's petition for leave to appeal.

This case turns on the interpretation of the recently enacted Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 1701 through 1721). The Act revolutionizes Illinois school labor law. It permits collective bargaining, and, within certain limita-

tions, the right to strike. Finding that unresolved educational labor disputes were "injurious to the public," the legislature determined that "adequate means must be established for minimizing them and providing for their resolution." (Ill. Rev. Stat. 1985, ch. 48, par. 1701.) Accordingly, the legislature declared:

"It is the public policy of this State and the purpose of this Act to promote orderly and constructive relationships between all educational employees and their employers. Unresolved disputes between the educational employees and their employers are injurious to the public, and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution." Ill. Rev. Stat. 1985, ch. 48, par. 1701.

To achieve these ends, the Act grants certain rights and imposes certain duties. Employees have the right to organize and to select their bargaining representatives. (Ill. Rev. Stat. 1985, ch. 48, par. 1703.) Employers have the right to refuse to bargain over certain "matters of inherent managerial policy." On the other hand, employers must bargain with a recognized collective bargaining representative over "wages, hours and other terms and conditions of employment." Ill. Rev. Stat. 1985, ch. 48, pars. 1704, 1710(a).

Once a recognized bargaining agent has been created (Ill. Rev. Stat. 1985, ch. 48, par. 1707), both parties must bargain collectively, must meet at reasonable times, must confer in good faith, and must reduce their agreements to writing. (Ill. Rev. Stat. 1985, ch. 48, par. 1710.) The written collective-bargaining agreement "shall contain a grievance resolution procedure" and "shall provide for binding arbitration of disputes concerning the administration and interpretation of the agreement." It must also contain a prohibition upon strikes during the term of the agreement. (Ill. Rev. Stat. 1985, ch. 48, par.

1710(c).) Refusal to "comply with a binding arbitration award" constitutes an unfair labor practice. Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(8), (b)(6).

Procedures for prosecuting an unfair labor practice are set forth in sections 14 through 16 of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1714, 1715, 1716). The initial determination of whether an unfair labor practice has been committed rests with the Illinois Educational Labor Relations Board. Board members are required to have "a minimum of five years of experience directly related to labor and employment relations in representing educational employees or educational employers in collective bargaining matters." (Ill. Rev. Stat. 1985, ch. 48, par. 1705(a).) The decision of the Board is subject to review by "the Appellate Court of the judicial district in which the Board maintains its principal office" (Ill. Rev. Stat. 1985, ch. 48, par. 1716(a)), which, as it happens, is the appellate court for the fourth judicial district.

No provision of the Act gives the circuit courts the power to vacate, enforce, or modify arbitration awards. The appellants argue, however, that the Act does not affect the jurisdiction of the circuit courts under the common law to determine whether a particular dispute is properly subject to arbitration, and they also argue that this particular dispute was inarbitrable. We do not agree.

Several aspects of the Act support the conclusion that the legislature intended to divest the circuit courts of primary jurisdiction over educational labor arbitration awards. First, the Act was adopted in the same legislative session as the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1601 through 1627). The two acts together were an attempt to provide "a comprehensive regulatory scheme for public sector bargaining in Illinois." (*Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, 530.) The Illinois Public Labor Relations Act (Ill. Rev. Stat.,

1984 Supp., ch. 48, par. 1608), unlike the Educational Labor Relations Act, explicitly provides for enforcement of arbitration awards in accordance with the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, pars. 101 through 123). Under the Uniform Arbitration Act, all proceedings to compel arbitration, to stay arbitration, to seek vacation of an award, or to enforce an award are through the circuit court. (Ill. Rev. Stat. 1985, ch. 10, pars. 102, 112, 114, 116.) The absence of any reference to the Uniform Arbitration Act in the Illinois Educational Labor Relations Act strongly suggests that the legislature did not intend review of arbitration awards by the circuit court, even as to "arbitrability."

The contention that there is an exception for arbitrability is also suspect for another reason. In many cases a single arbitration award could be attacked on several grounds, including, but not limited to, the claim that the underlying dispute was inarbitrable. If jurisdiction over an award is to be divided between the Board and the circuit courts, it will often be difficult to know in advance where suit should be brought. Conflicting judgments and forum shopping will imperil the uniformity which the Act obviously seeks to achieve.

The appellant also cites many cases from other jurisdictions which, it claims, support its contentions. Without going into great detail, or mentioning each specific case cited by the appellant, we believe that all of these cases are distinguishable. For example, the private sector cases cited by the appellant (see, *e.g., United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347) all involve a question of "arbitrability" which cannot by statute be presented under a public education collective-bargaining agreement in Illinois: whether the parties actually agreed to submit the particular dispute to arbitration. Since the Act specifically provides that all such collective

agreements between educational employee unions and their employers must contain a clause which "provide[s] for binding arbitration of disputes concerning the administration [and] interpretation of the agreement" (Ill. Rev. Stat. 1985, ch. 48, par. 1710(c)), no question of the parties' intent to arbitrate can arise. Likewise, the question of whether a certain matter involves "inherent managerial policy," and is not, therefore, a mandatory subject of bargaining, is to be determined not by the parties but by the statute, as interpreted in the first instance by the Board.

As for the cases involving statutes of other States, the short answer to the appellant's citation of these cases is that these statutes differ from ours. They specifically provide, in most cases, for review of arbitration awards by the trial courts. (See, *e.g.*, Alaska Stat. §23.40.200(f) (1984) ("arbitration to be conducted solely according to the Uniform Arbitration Act"); Iowa Code Ann. §20.17(5) (West 1978); Me. Rev. Stat. Ann. title 26, §972 (1981) (either party to an arbitration "may seek a review by the Superior Court of a binding determination by an arbitration panel"); Mass. Ann. Laws ch. 150E, §8 (Law. Co-op. 1987) (binding arbitration enforceable under arbitration act granting court jurisdiction); N.Y. Civ. Serv. Law §205(5)(d) (McKinney 1983) (specifically removing jurisdiction of employee contract disputes from public employment relations board); Wis. Stat. Ann. §111.86 (West 1987).) The only statute which is in any way comparable is the Pennsylvania statute which originally contemplated no judicial review of arbitration awards at all, but which has been judicially interpreted to allow for review to determine arbitrability. (See *Appeal of Upper Providence Police, Delaware County Lodge No. 27 Fraternal Order of Police*, 514 Pa. 501, 526 A.2d 315 (1987).) Our statute, in contrast, provides

for a specific form of judicial review which the legislature apparently intended would exclude all others.

For the same reasons, we find the cases of *Board of Trustees of Community Colleges District No. 508 v. Cook County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617, and *Board of Education of Rockford School District No. 205 v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, unpersuasive. The reasoning of the court in *Board of Trustees* depends heavily on the premise that a union attempt to arbitrate an inarbitrable grievance would not be an unfair labor practice, and would not therefore be reviewable by the Board. This argument overlooks the fact that an employer who believes a particular dispute is inarbitrable may still contest arbitrability by refusing to comply with the award. The Board, in any case, disputes this premise, saying that it looks upon attempts to arbitrate inarbitrable matters as refusals to bargain in violation of the act. The reasoning of *Board of Education* similarly depends upon the premise that attempts to arbitrate the inarbitrable cannot be reviewed by the Board. Neither case contains the detailed discussion of the legislative history which persuaded the appellate courts in this case and in *Chicago Board of Education v. Chicago Teachers Union* (1986), 142 Ill. App. 3d 527, to hold that the legislature intended to divest the circuit courts of jurisdiction over arbitration awards. We find this history similarly persuasive here.

Lastly, we come to the most compelling argument advanced by the appellant: that granting the Board exclusive primary jurisdiction over arbitration disputes would cause grave practical difficulties for parties seeking review. The appellant argues that precluding circuit court jurisdiction would force an employer who believes a particular dispute is inarbitrable to present that claim first to the arbitrator and the Board, thus delaying final judi-

cial resolution of the arbitrability of the dispute. The appellant also argues that a party seeking review of an unfavorable arbitrator's decision would be forced to commit an unfair labor practice by refusing to comply with the decision.

The appellant sees two objections to that procedure. First, it may not be possible for all parties who contest an arbitrator's decision to commit an unfair labor practice by defying it. Where the party who loses in arbitration is not ordered to take some action but is simply denied a requested benefit, that party cannot "refuse to comply" with the arbitrator's award. For example, a teacher who is denied a back-pay award cannot "refuse to comply" by going to the school board's bank and helping herself to a check for back pay. Second, the appellant levels the more general charge that requiring a party wishing to contest an arbitration award to commit an unfair labor practice is somehow unseemly and in conflict with the Act's goal of promoting "orderly and constructive relationships between all educational employees and their employers." Ill. Rev. Stat. 1985, ch. 48, par. 1701.

To the claim of delay, the appellees reply that this is what the Act intended, and that an employer who does not believe a dispute is arbitrable can in fact achieve earlier review with the filing of its own claim that the union committed an unfair labor practice by insisting on arbitrating an allegedly inarbitrable matter. The Board says that it generally views arbitration of nonarbitrable matters as an unfair labor practice. We believe this argument is persuasive. And while we sympathize with the appellant's uneasiness at having to commit a technical breach of the law in order to obtain review, this consequence flows from the structure of the Act. This method of review is not uncommon in labor law; under the National Labor Relations Act, for example, a party can only obtain review of a bargaining unit decision by refusing to bar-

gain, and thus committing an unfair labor practice. (See, e.g, *Boire v. Greyhound Corp.* (1964), 376 U.S. 473, 11 L. Ed. 2d 849, 84 S. Ct. 894.) The lack of a provision for automatic review of an arbitrator's decision, absent an unfair labor practice, jibes with the Act's declared goal of minimizing disputes and encouraging arbitration.

It only remains to consider the argument that certain types of arbitration decisions cannot be reviewed at all, because it is not possible to refuse to comply with them. This is an interesting, and troubling, argument, but it is not presented by the facts of this case. Here the appellants could and did refuse to comply with the arbitrator's order to reinstate Compton and award him back pay. Whether the circuit court would have jurisdiction in circumstances where no other review of the arbitrator's decision could be had is a question which we need not answer in the context of this case. To the extent that the appellate court decisions of *Board of Trustees of Community Colleges District No. 508 v. Cook County College Teachers Union, Local No. 1600* (1985), 139 Ill. App. 3d 617, and *Board of Education of Rockford School District No. 205 v. Rockford Education Association* (1986), 150 Ill. App. 3d 198, are inconsistent with our decision here, these decisions are overruled. Since we resolve the case upon this ground, we need not discuss appellant's contention that its decision to fire Compton was a matter of inherent managerial policy, involved a nondelegable statutory duty, or was for any other reason not subject to arbitration. *Cf. City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353. The responsibility for determining the merits of these claims belongs, in the first instance, to the Board.

For the foregoing reasons, the decision of the appellate court is affirmed.

*Affirmed.*