STAUNTON COMMUNITY UNIT SCHOOL DISTRICT NO. 6, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—89—0883

Opinion filed August 2, 1990.

Brian A. Braun, S. Jeff Funk, and Megan Paisley, all of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for respondent Staunton Education Association.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

The Board of Education, Staunton Community Unit School District Number 6 (District), appeals from a decision of the Illinois Educational Labor Relations Board (Board) dismissing the unfair labor practice charge it filed against the Staunton Education Association (Association). (*Staunton Community Unit School District No. 6 Board of Education*, 5 Pub. Employee Rep. (Ill.) par. 1178, No. 89—CB—0005—

S (Illinois Educational Labor Relations Board, Oct. 16, 1989) (hereinafter *Staunton*, 5 Pub. Employee Rep. (Ill.) par. 1178).) The District charged the Association attempted to arbitrate an inarbitrable matter when it submitted a grievance, from a part-time teacher seeking full-time teaching status, to the American Arbitration Association (AAA). We agree with the Board that the District's unfair labor practice charge raised no issue of fact or law and affirm the Board's decision.

The District and the Association were parties to a collective-bargaining agreement which contained a management-rights provision, which stated:

"ARTICLE V. AREAS FOR DISCUSSION AND AGREEMENT

Except as validly limited by express provisions of this agreement, the District reserves the right to unilaterally determine the standards of service to be offered by it; to set the standards of selection for employment; to direct and assign its employees and to regulate work schedules; to take disciplinary action; to relieve its employees from duty in accordance with the Illinois School Code; to maintain the efficiency of governmental operations; to determine the methods, means and personnel by which its operations are to be conducted; to determine the content of job classifications; to allocate positions according to Salary Schedule agreed to in this agreement; to exercise complete control and discretion over its organization and the facilities, methods means and technology of performing its work."

The agreement defined a grievance as "a violation of the Agreement," and provided a five-step grievance procedure. The fifth step in the procedure was final and binding arbitration. The agreement also contained a "zipper clause," which stated:

"ARTICLE VII. DURATION OF THE AGREEMENT

This Agreement constitutes the full and complete agreement of the parties and may be altered, changed, added to, deleted from or modified only through the voluntary mutual consent of the parties in a written, signed amendment to this Agreement. The Association agrees that all negotiable items have been discussed during the negotiations leading to this Agreement, and agrees that negotiations will not have to be reopened on any item, whether contained in this Agreement or not, nor will negotiations be reopened on the impact of any permissible management action, during the life of this Agreement. The operating of schools and the direction of staff are vested exclusively in the School Board."

In 1965, the District hired Marcia McGhee as a full-time employee to teach Spanish and French. After the 1976-77 school year, the District reduced foreign language offerings and its work force. McGhee became a part-time employee, teaching only Spanish. She filed a grievance with the District on September 8, 1988, seeking return to full-time status, alleging the District violated Appendix A of the collective-bargaining agreement, the District's salary schedule. The initial grievance form alleged:

"I am teaching five periods of Spanish daily; a last period study hall is available. Five teaching periods and a study hall is a full schedule."

The second grievance form stated:

"I am being held to part-time status through 'gerrymandering' of the schedule. There are 131 students enrolled in Spanish, placed in only 5 classes. I have *no* planning period. The two Spanish II classes have 28 and 29 students in each; this should have been made into three classes. There are also two study hall periods available with no assigned teacher. Those pupils are presently being sent to the library."

The District processed McGhee's grievance from September 8 until December 9, 1988, and at each stage denied the grievance because it alleged no violation of the collective-bargaining agreement, which is silent as to determinations of full- or part-time status. The District filed an unfair labor practice charge with the Board on November 30, 1988, in anticipation of the Association's demand for arbitration. The District requested the AAA stay arbitration pending resolution of the case. On December 9, 1988, the Association submitted the grievance to the AAA for final and binding arbitration. The AAA agreed to stay arbitration.

The Board's Executive Director issued a recommended decision and order, which dismissed the unfair labor practice charge filed by the District. (*Staunton Community Unit School District No. 6*, 5 Pub. Employee Rep. (Ill.) par. 1085, No. 89—CB—0005—S (Illinois Educational Labor Relations Board, Executive Director, April 20, 1989).) The District filed exceptions to his decision and the Board issued an opinion affirming the Executive Director's decision to dismiss the unfair labor practice charge. *Staunton*, 5 Pub. Employee Rep. (Ill.) par. 1178.

The Board found the District raised no issue of fact or law. The Board found no issue of fact had been raised by the District's charge because neither party presented any evidence other than the collective-bargaining agreement with respect to the arbitrability of the underlying dispute. "The agreement speaks for itself, and we will presume

that the parties used words in their ordinary sense. Thus, a question of fact warranting a hearing does not exist." *Staunton,* 5 Pub. Employee Rep. (Ill.) par. 1178, at IX-434.

The Board found the arbitration clause in the collective-bargaining agreement did not exclude the subject of the grievance from arbitration and, therefore, it was arbitrable. The Board rejected the District's arguments that the agreement's management-rights clause and zipper clause excluded the grievance from arbitration. The Board also rejected the District's contention that arbitration would violate section 4 of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1704) because the subject matter of the grievance involved the nondelegable authority of the District.

■ The Board's expertise in such matters must be given due consideration. "Any other holding on our part would, for practical purposes, make appellate review of bargaining issues trial *de novo.* Such a result would appear to substitute our general knowledge and study for the expertise required of Board members by section 5 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1705)." (*Decatur Board of Education, District No. 61 v. Illinois Educational Labor Relations Board* (1989), 180 Ill. App. 3d 770, 775, 536 N.E.2d 743, 746.) The function of the reviewing court is to determine whether the Board's findings are against the manifest weight of the evidence. (*City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 507.) This court must accord deference to the Board's interpretation of the Act, unless its interpretation is erroneous. (*Hardin County Education Association v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 173-74, 528 N.E.2d 737, 740.) Findings and conclusions of the Board as to factual questions are considered *prima facie* true and correct. Ill. Rev. Stat. 1987, ch. 110, par. 3—110.

We must first address which forum decides initial questions of arbitrability, the Board or the arbitrator. The District contends the Board properly resolves such questions, while the Association would have the arbitrator make such determinations.

The Illinois Supreme Court has not expressly ruled on whether the Board or the arbitrator should make initial arbitrability decisions, although the court has held the Act divests circuit courts of jurisdiction to make arbitrability decisions. *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 538 N.E.2d 524; *Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, 526 N.E.2d 149.

In *Compton,* the court stated, in *dicta:*

"[T]he private sector cases cited by the appellant (see, *e.g.,* *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347) all involve a question of 'arbitrability' which cannot by statute be presented under a public education collective-bargaining agreement in Illinois: whether the parties actually agreed to submit the particular dispute to arbitration. Since the Act specifically provides that all such collective agreements between educational employee unions and their employers must contain a clause which 'provide[s] for binding arbitration of disputes concerning the administration [and] interpretation of the agreement' (Ill. Rev. Stat. 1985, ch. 48, par. 1710(c)), no question of the parties' intent to arbitrate can arise. Likewise, the question of whether a certain matter involves 'inherent managerial policy,' and is not, therefore, a mandatory subject of bargaining, is to be determined not by the parties but by the statute, as interpreted in the first instance by the Board." (*Compton,* 123 Ill. 2d at 222-23, 526 N.E.2d at 152-53.)

The court made similar comments, also in *dicta,* in *Warren Township:*

"Because of our conclusion that the Board, and not the circuit court, has exclusive jurisdiction to decide questions of arbitrability, we need not address whether the School District's dismissal of Ms. Frank involved a nondelegable duty under the School Code[,] was a matter of inherent managerial control, or was for any other reason inarbitrable. (See *Compton,* 123 Ill. 2d at 226.) Under the statutory scheme established by the General Assembly, that question has been left for the Board to decide in the first instance, with review available in the appellate court." *Warren Township,* 128 Ill. 2d at 166-67, 538 N.E.2d at 529.

The Association believes that because the District argues the management-rights and zipper clauses render the grievance inarbitrable, the issue is one of interpretation of the collective-bargaining agreement, a matter for the arbitrator rather than the Board. The Association cites *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 530 N.E.2d 439, as support for its position. In that case, decided under the Uniform Arbitration Act, the Illinois Supreme Court held:

"If it is obvious that there was an agreement to arbitrate the dispute in question, that is, if the dispute clearly falls within the scope of the arbitration agreement, the court should order arbitration. If it is clear that it does not, arbitration should be refused. [Citation.] The drafters of the uniform act intended, in

unclear cases and in the face of an omnibus arbitration clause, that the court should initially defer the arbitrability question to the arbitrator \*\*\*." *Donaldson, Lufkin & Jenrette Futures, Inc.*, 124 Ill. 2d at 449-50, 530 N.E.2d 445.

■ We agree with the District that the initial question of arbitrability, when raised by the parties in proceedings under the Act, should be resolved by the Board. The Board accomplishes this task by looking at whether the grievance falls within the terms of the collective-bargaining agreement. If the Board makes an initial determination that the grievance is arbitrable, then it goes to the arbitrator, where the parties may again raise arbitrability as well as the merits of the grievance. Thus, in this case it was appropriate for the Board to make an initial determination that the grievance was arbitrable, in order to resolve the pending unfair labor practice charge.

The next question we must decide is whether the Board properly dismissed the District's unfair labor practice charge, thus sending the dispute to arbitration. The District argues the parties agreed to exclude the subject of the underlying grievance from arbitration, as evidenced by the management-rights and zipper clauses. In the management-rights clause, quoted above, the District reserved the right to direct and assign its employees and to regulate work schedules. The District maintains it had discretionary authority, pursuant to this clause, to assign employees to full-time or part-time work. Because the subject of teacher "loads" or assignments was not specifically included in the collective-bargaining agreement, and in view of the language of the zipper clause, the District concludes there was no agreement to arbitrate the matter and the subject is not arbitrable.

The Board rejected these arguments, concluding the language of the collective-bargaining agreement did not clearly exclude McGhee's grievance. On appeal, the Board indicates it viewed McGhee's grievance as a salary dispute, presumably because the grievance alleged a violation of the salary schedule, rather than as a work-assignment dispute.

The Board concluded the District confused a general "reservation of rights clause with one which specifically excludes certain matters from arbitration." (*Staunton*, 5 Pub. Employee Rep. (Ill.) par. 1178, at IX-434.) The Board ruled something more was needed to render the grievance inarbitrable. Because the District did not provide any external evidence to demonstrate the parties' intent to exclude this dispute from arbitration, and because there was no specific language excluding such grievances, the Board dismissed the District's charge.

On appeal, the District argues the Board's reasoning was errone-

ous. First, given the District's position that the management-rights clause excludes certain matters from the contract and therefore from arbitration, it interprets the Board's decision as allowing employees to force arbitration of matters outside the contract. "Such a rule would allow arbitration of any conceivable question raised by the employee, including illegal issues or the existence of the Easter Bunny." This, according to the District, would produce chaos at the bargaining table, increase litigation costs, and contravene the purpose of the Act.

Second, requiring the District to arbitrate a matter it did not agree to arbitrate would jeopardize the stability of the bargaining process because the parties could no longer rely exclusively on their agreement to govern their relations.

Finally, the District argues the Board ignored the plain meaning of the parties' contract when it ruled that more explicit exclusionary language was necessary to render a matter inarbitrable. A requirement for more precise language would, according to the District, "unduly hamper agreement between the parties."

The Association contends the District is confusing its defense of the merits of McGhee's grievance with the question of whether the grievance is arbitrable.

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers of America v. American Manufacturing Co. (1960), 363 U.S. 564, 567-68, 4 L. Ed. 2d 1403, 1407, 80 S. Ct. 1343, 1346.

■ The United States Supreme Court held, in United Steelworkers of America v. Warrior & Gulf Navigation Co. (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347: "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail ***." (Warrior & Gulf, 363 U.S. at 584-85, 4 L. Ed. 2d at 1419, 80 S. Ct. at 1354.) In dicta, the Court stated: "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement." Warrior & Gulf, 363 U.S. at 581, 4 L. Ed. 2d at 1417, 80 S. Ct. at 1352.

We agree with the Association and the Board that the case cited by the District, Moraine Valley Community College, 5 Pub. Employee Rep. (Ill.) par. 1102, No. 89—CB—0012—C (Illinois Educational

Labor Relations Board, May 12, 1989), is distinguishable. The grievance there involved class assignments and changes, areas over which the college claimed to have sole and exclusive authority. The management-rights clause included a specific list of matters reserved to the college, "including but not limited to the responsibilities for the right: *** To determine class schedules, non-classroom assignments, the hours of instruction, and the duties, responsibilities and assignments of faculty members." (*Moraine Valley Community College*, 5 Pub. Employee Rep. (Ill.) par. 1102, at IX-253.) The collective-bargaining agreement in this case contained a broad arbitration clause, requiring arbitration of any contract violation. Additionally, there was no contract language expressly excluding any subject from the arbitration requirement.

█ Any exclusion from arbitration must be expressly stated in the contract. The presence of the management-rights and zipper clauses in this contract did not render this dispute inarbitrable. Express language, excluding from arbitration the assignment of teachers to full-time or part-time employment, was necessary. The Board correctly concluded the parties did not exclude the subject of McGhee's grievance from arbitration, and this conclusion was not against the manifest weight of the evidence.

The District and the Association briefed the following issue: Can the parties to a collective bargaining-agreement legally exclude a subject from arbitration? Because the issue is not properly before this court, we will not address it.

Likewise, we decline to address the District's argument that arbitration of this grievance will violate section 10(b) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1710(b)). This statute precludes the parties from implementing a provision in a collective-bargaining agreement if it would be in violation of, or inconsistent or in conflict with other Illinois statutes. The District argues this statute is the successor to the nondelegability doctrine in use before passage of the Act.

Section 10–20.7 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 10–20.7) gives school boards authority to appoint all teachers and fix the amounts of their salaries. According to the District, this authority includes assigning teachers to full- or part-time work. Thus, even if the parties' collective-bargaining agreement had addressed McGhee's grievance, such a provision would have violated section 10(b) of the Act.

The Association contends the District is anticipating that if the Association wins on the merits of the grievance, any award by an arbitrator might conflict with the School Code and thus violate section 10(b)

of the Act. The issue of remedy does not render a grievance inarbitrable and the District's argument is thus premature, according to the Association.

The Board declined to decide whether arbitration would violate the School Code because the District raised this issue in its reply brief before the Board, rather than in its exceptions to the Executive Director's decision. The issue was thus not raised in a timely fashion. We will not address this issue as it was not decided by the Board. *Village of Cary v. Pollution Control Board* (1980), 82 Ill. App. 3d 793, 796, 403 N.E.2d 83, 86.

■ Finally, the District argues section 4 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1704) precludes arbitration of McGhee's grievance, in that it states, in part:

"Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees. Employers, however, shall be required to bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by employee representatives."

The District maintains that the assignment of employees to full- or part-time work is much more closely aligned to "inherent managerial policy," than to the "wages, hours and terms and conditions of employment" required to be bargained by section 10(b).

Section 4 does not apply to this case. The statute addresses bargaining, not arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (*Warrior & Gulf*, 363 U.S. at 582, 4 L. Ed. 2d at 1417, 80 S. Ct. at 1353.) Section 4 of the Act does not preclude arbitration of McGhee's grievance.

In summary, the Board rather than the arbitrator makes the initial decision as to whether a grievance is arbitrable, at least when arbitrability is contested in proceedings before the Board. The Board in this case correctly decided McGhee's grievance is arbitrable and dismissed the unfair labor practice charge filed by the District. The Board's decision is affirmed.

Affirmed.

SPITZ and STEIGMANN, JJ., concur.