# Illinois Official Reports

## Appellate Court

---

### *Western Illinois University v. Illinois Educational Labor Relations Board*, 2020 IL App (4th) 190143

---

| | |
|---|---|
| Appellate Court Caption | WESTERN ILLINOIS UNIVERSITY, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and UNIVERSITY PROFESSIONALS OF ILLINOIS, LOCAL 4100, Respondents. |
| District & No. | Fourth District<br>No. 4-19-0143 |
| Filed | April 10, 2020 |
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board, No. 2018-CA-0045-C. |
| Judgment | Vacated and remanded with directions. |
| Counsel on Appeal | Roy G. Davis and Abby J. Clark, of Davis & Campbell L.L.C., of Peoria, for petitioner.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Ann C. Maskaleris, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.<br><br>Melissa J. Auerbach, of Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich, of Chicago, for other respondent. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Cavanagh concurred in the judgment and opinion.

## OPINION

¶ 1       In February 2019, respondent, the Illinois Educational Labor Relations Board (IELRB), found petitioner, Western Illinois University (University), violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1), (a)(8) (West 2016)), when it failed to comply with a (1) July 2017 arbitration award and (2) March 2018 supplemental arbitration award.

¶ 2       On direct administrative review of the IELRB's order, the University argues that the IELRB erred in determining that it violated sections 14(a)(1) and 14(a)(8) of the Act because (1) whether the University complied with the July 2017 arbitration award was not an arbitrable issue as a matter of law, (2) the arbitrator lacked the contractual authority to determine that the University failed to comply with the July 2017 arbitration award, and (3) the University was privileged to refuse compliance with the March 2018 supplemental award because it was not binding. We agree, vacate the IELRB's opinion and order, and remand with instructions.

¶ 3                              I. BACKGROUND
¶ 4                      1. *Layoffs and Arbitration Decision*
¶ 5       The University was founded in 1899 and is a public institution of higher education in Illinois. University Professionals of Illinois, Local 4100, IFT-AFT, AFL-CIO (Union), is the exclusive collective bargaining representative of a single bargaining unit consisting of two groups of faculty employed by the University. The Act (115 ILCS 5/1 to 21 (West 2016)) applies to and regulates relations between the University and the Union for the bargaining units. A board of trustees governs the University's operations pursuant to section 35-10 of the Western Illinois University Law (110 ILCS 690/35-10 (West 2016)). Jack Thomas is the University's president and chief executive and reports to the board of trustees. Academic Vice President Kathleen Neumann reports to Thomas and oversees all of the colleges, libraries, budgets, and planning.

¶ 6       In the time period relevant to this appeal, the University and the Union were parties to a collective bargaining agreement (CBA). Article 24 of the CBA contained provisions regarding staff reduction procedures for tenured and tenure-track faculty and specifically authorized the University to lay off employees due to, among other reasons, "demonstrable enrollment reduction." Article 24.2 of the CBA outlined five factors the University must consider when determining whom to lay off. If the University chose to lay off faculty, article 24.4 of the CBA required it to make "a reasonable effort to locate other equivalent employment within the University" for them "prior to the effective date" of their layoff. The University was then required to notify the affected faculty of the result of such efforts. Pursuant to the Act (115 ILCS 5/10(c) (West 2016)), the CBA contained a three-step grievance procedure, culminating in a final and binding arbitration, for an alleged "violation, misinterpretation, or an improper application of the provisions of" the CBA.

¶ 7	At its peak, the University enrolled nearly 12,000 students. By 2015, enrollment decreased to less than 9000. Consequently, in the fall of 2015, Thomas directed Neumann to investigate whether any faculty should be laid off. Neumann enlisted Associate Provost Russell Morgan, Associate Provost for Undergraduate and Graduate Studies Nancy Parsons, and the deans of each of the four colleges to assist in this task. By November 2015, Neumann and her team identified 42 faculty members for layoff, which they eventually narrowed to 19. In January 2016, the board of trustees approved the layoffs.

¶ 8	The Union filed grievances on behalf of 10 of the 19 faculty members who received layoff notices, including Dr. Daniel Ogbaharya, an assistant professor in a tenure-track position in the political science department, and Dr. Holly Stovall, an assistant professor in the women's studies department. Pursuant to the CBA, the 10 faculty members' grievances proceeded to arbitration. The parties selected arbitrator Fredric Dichter. Article 6.12(b)(1) of the CBA defined the authority of the arbitrator as follows:

> "The arbitrator shall neither add to, subtract from, modify, or alter the terms or provisions of this Agreement. Arbitration shall be confined solely to the application and/or interpretation of this Agreement and the precise issues submitted for arbitration. The arbitrator shall have no authority to determine any other issue(s). The arbitrator shall refrain from issuing any statements of opinion or conclusions not essential to the determination of the issue(s) submitted."

Article 6.12(c) of the CBA further stated, "Except as modified by the provisions of this Agreement, arbitration proceedings shall be conducted in accordance with the rules and procedures of the American Arbitration Association." Finally, article 7.3 of the CBA provides that "[n]either the Union nor the Board waives the rights guaranteed them under the [Act]."

¶ 9	In April 2017, Dichter conducted a hearing on the grievances. The parties stipulated that the issues to be decided were whether the University violated the CBA when it laid off the individual grievants (including Drs. Ogbaharya and Stovall) and, if so, what the remedies should be. At the hearing, the Union orally requested that, should Dichter sustain all or some of the grievances, that he "retain jurisdiction to resolve any disputes with respect to implementation of the remedy."

¶ 10	Dichter issued a decision and award on July 6, 2017. In his decision, Dichter resolved as to each grievance whether the University complied with articles 24.2 and 24.4 of the CBA.

¶ 11	With respect to Dr. Ogbaharya, Dichter found that the University violated article 24.2 of the CBA and ordered the University to compensate Dr. Ogbaharya for his lost wages. Dichter further ordered that, prior to the 2017-18 academic year, the University reevaluate its layoff decision, considering all five factors enumerated in article 24.2 of the CBA. If, after complying with article 24.2, the University still decided to lay off Dr. Ogbaharya, it would also be required to comply with article 24.4.

¶ 12	With respect to Dr. Stovall, Dichter found the University violated article 24.4 of the CBA and ordered that the University make reasonable efforts to find employment for Dr. Stovall within the foreign languages, liberal arts, or any other department in which she was qualified to teach.

¶ 13	At the conclusion of his decision and award, Dichter stated that he "shall retain [j]urisdiction for no less than 90 days to resolve any issues regarding the implementation of

this [a]ward."

¶ 14                                    2. *Implementation of the Arbitration Award*

¶ 15        On September 12, 2017, Neumann sent letters to Drs. Stovall and Ogbaharya detailing the University's efforts to identify faculty positions for which they might be eligible. Neumann's letters concluded that, despite the University's efforts, they were unable to find new positions within the University for Drs. Stovall and Ogbaharya and therefore they would be laid off.

¶ 16        The same date, the Union sent an e-mail to Dichter claiming that the University failed to comply with his July 2017 arbitration award. The University responded that it had complied with the award. Following a series of e-mail exchanges, the Union requested that Dichter assert his "retained" jurisdiction and conduct a second hearing to determine whether the University complied with the award. The University responded that Dichter lacked jurisdiction and authority to make such a determination. Dichter concluded that he had jurisdiction to resolve this issue and scheduled a hearing for January 16, 2018.

¶ 17        On January 2, 2018, the Union filed an unfair labor practice charge with the IELRB alleging the University violated section 14(a) of the Act (*id.* § 14(a)) by refusing to comply with Dichter's July 2017 arbitration award.

¶ 18        On January 16, 2018, the parties convened for a hearing conducted by Dichter. At the hearing, the University objected to Dichter's authority and jurisdiction to resolve whether the University complied with his July 2017 award. Dichter noted the objection but proceeded with the hearing, stating, "[W]hat we are here today is on the Union's contention that with regard to [the grievants], that the University has failed to comply with the requirements of my earlier award." Following the hearing, the parties filed briefs. In the University's brief, it again argued that Dichter lacked authority to determine whether it complied with the July 2017 arbitration award because the issue was within the IELRB's primary and exclusive jurisdiction. On March 5, 2018, Dichter issued a second opinion declaring that the University had not complied with the July 2017 award as it related to Drs. Ogbaharya and Stovall. In his opinion, Dichter issued a "supplemental award" ordering remedies with respect to each grievant.

¶ 19        On March 18, 2018, the Union amended its January 2018 unfair labor practice charge against the University, stating:

> "On March 5, 2018, the Arbitrator issued a supplemental award. The Arbitrator in the supplemental award found that the [University] had failed to implement the remedies ordered with respect to two of the grievants and ordered remedies with respect to such grievants. The [University] has refused to comply with the provisions of the supplemental award."

¶ 20        On July 16, 2018, the acting executive director of the IELRB issued a complaint and notice of hearing alleging that the University violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act by refusing to comply with the July 2017 arbitration award and the March 2018 supplemental award.

¶ 21        On September 5, 2018, an administrative law judge (ALJ) for the IELRB conducted a hearing on the complaint. At the hearing, the University called Neumann, Morgan, and the dean of the College of Arts and Sciences to testify. The Union objected to their testimony on the issue of relevance, arguing that the IELRB may only consider the proceedings before the arbitrator in resolving the unfair labor practice charge. The ALJ allowed the testimony over

- 4 -

the Union's objection. On November 15, 2018, the ALJ entered a written order finding that there were no determinative issues of fact that required her recommended decision and removed the case to the IELRB for a decision.

¶ 22 On February 21, 2019, the IELRB issued a final opinion and order. In the order, it found that the University violated section 14(a)(8) of the Act and, derivatively, section 14(a)(1), by failing to comply with the July 2017 arbitration award and the March 2018 supplemental award. In making this determination, the IELRB followed the arbitrator's findings of fact, stating that it "may not consider matters beyond the arbitrator's findings." It further found that Dichter had the authority to retain jurisdiction over the implementation of the July 2017 award, stating that there was "no express limitation in the collective bargaining agreement preventing the arbitrator from determining whether the University implemented the original award" and that "the fact that the [IELRB] has exclusive primary jurisdiction over whether an employer has complied with an arbitration award does not mean that the arbitrator could not retain jurisdiction over the implementation of the remedy."

¶ 23 Accordingly, the IELRB ordered the University to (1) cease and desist from refusing to comply with both arbitration awards, (2) immediately comply with both arbitration awards, and (3) notify the IELRB's executive director in writing within 35 days of the steps taken to comply with IELRB's order.

¶ 24 Thereafter, the University petitioned for direct administrative review of the IELRB's final order pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017) and section 16(a) of the Act (115 ILCS 5/16(a) (West 2016)).

¶ 25                                    II. ANALYSIS

¶ 26 On direct administrative review of the IELRB's order, the University argues that the IELRB erred by determining that it violated sections 14(a)(1) and 14(a)(8) of the Act because (1) whether the University complied with the July 2017 arbitration award was not an arbitrable issue as a matter of law, (2) the arbitrator lacked the contractual authority to determine that the University failed to comply with the July 2017 arbitration award, and (3) the University was privileged to refuse compliance with the March 2018 supplemental award because it was not binding. The University therefore requests this court vacate the IELRB's opinion and order and remand with instructions to consider all the evidence relevant to whether the University complied with the July 2017 arbitration award that was presented to the ALJ.

¶ 27                                A. Standards of Review

¶ 28 The Illinois Supreme Court has held that "judicial review of an IELRB decision is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 1994)) and extends to all issues of law and fact presented by the record." *SPEED District 802 v. Warning*, 242 Ill. 2d 92, 111, 950 N.E.2d 1069, 1080 (2011). We review the IELRB's findings as to issues of law *de novo*, while its findings on issues of fact will be deemed *prima facie* true and correct unless they are against the manifest weight of the evidence. *Id.* at 111-12.

> " '[T]he clearly erroneous standard of review is proper when reviewing a decision of the IELRB or the ILRB because the decision represents a mixed question of fact and law. [Citation.] An agency decision will be reversed because it is clearly erroneous only if the reviewing court, based on the entirety of the record, is " 'left with the definite and

firm conviction that a mistake has been committed.' " [Citation.] While this standard is highly deferential, it does not relegate judicial review to mere blind deference of an agency's order.' " *Id.* at 112 (quoting *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97-98, 862 N.E.2d 944, 950-51 (2007)).

¶ 29                                B. Compliance With July 2017 Award

¶ 30        The University does not argue that Dichter's July 2017 award was not binding. Rather, it argues Dichter lacked jurisdiction as a matter of law to determine whether the University complied with the award.

¶ 31        Section 14(a)(8) of the Act prohibits educational employers from "[r]efusing to comply with the provisions of a binding arbitration award." 115 ILCS 5/14(a)(8) (West 2016). Prior to the passage of the Act, Illinois circuit courts had jurisdiction to enforce or vacate arbitration awards. However, the Illinois Supreme Court held in *Board of Education of Community School District No. 1 v. Compton*, 123 Ill. 2d 216, 221, 526 N.E.2d 149, 152 (1988), that the Act "divest[s] the circuit courts of primary jurisdiction over educational labor arbitration awards." Accordingly, the IELRB, rather than the circuit courts, has exclusive primary jurisdiction to review binding arbitration awards under the Act. See *Chicago Board of Education v. Chicago Teachers Union*, 142 Ill. App. 3d 527, 531-32, 491 N.E.2d 1259, 1262 (1986).

¶ 32        In its opinion and order, and on direct administrative review before this court, the IELRB cites various case law and secondary authority stating that an arbitrator may retain jurisdiction to resolve disputes arising from an arbitration award. See Edna A. Elkouri & Frank Elkouri, How Arbitration Works 7-50 (Kenneth May ed., 8th ed. 2016) ("[I]n virtually all cases of grievance arbitration where a remedy is called for, labor arbitrators ought to routinely retain jurisdiction of the award solely for the purposes of resolving any disputes among the parties regarding the meaning, application and implementation of that remedy." (Internal quotation marks omitted.)); *Kroger Co. v. United Food & Commercial Workers Union Local 876*, 284 F. App'x 233, 241 (6th Cir. 2008) (finding that the arbitrator's retention of jurisdiction to clarify his award stemmed from an arguable interpretation of the collective bargaining agreement); *Case-Hoyt Corp. v. Graphic Communications International Union Local 503*, 5 F. Supp. 2d 154, 156 (W.D.N.Y. 1998) (determining the court did not have *de novo* authority to resolve disputes arising from an arbitration award where the arbitrator retained jurisdiction over such matters); *Greater Latrobe School District v. Pennsylvania State Education Ass'n*, 615 A.2d 999, 1004 (Pa. Commw. Ct. 1992) (holding that the arbitrator's retention of jurisdiction was a procedural matter within the exclusive province of the arbitrator).

¶ 33        First, we agree with the University that the above authority and case law are distinguishable from this case. The University correctly notes that "neither federal labor law nor Illinois commercial law contains any provisions remotely resembling section 14(a)(8) [of the Act]." Moreover, although the Pennsylvania case law cited by the IELRB interprets a statutory provision similar to section 14(a)(8) of the Act, Pennsylvania law also provides for judicial review of arbitration awards by the state trial courts. See *id.* at 1001-02. In contrast, the Act "divest[s] the circuit courts of primary jurisdiction over educational labor arbitration awards" (*Compton*, 123 Ill. 2d at 221), and the IELRB has exclusive primary jurisdiction to review binding arbitration awards (see *Chicago Board of Education*, 142 Ill. App. 3d at 531-32). Accordingly, we conclude that the IELRB's reliance on Pennsylvania case law is unpersuasive here. See *Compton*, 123 Ill. 2d at 223-24 ("Our statute, in contrast [to Pennsylvania's], provides

for a specific form of judicial review which the legislature apparently intended would exclude all others.").

¶ 34     The IELRB further contends that its authority to determine whether a party has complied with a binding arbitration award coexists with the arbitrator's authority to oversee the "implementation" of the award. The IELRB simultaneously admits that it was within the exclusive jurisdiction of the IELRB to determine whether the University complied with the July 2017 arbitration award. See *Chicago Board of Education*, 142 Ill. App. 3d at 531. We fail to see how the issue of whether the University "implemented" the arbitration award in this case is meaningfully distinguishable from whether it "complied" with the award. To allow an arbitrator to determine whether a party complied with a binding arbitration award under the guise of "implementation" would usurp the IELRB's exclusive authority to make that determination as the legislature intended.

¶ 35     We also agree with the University that an arbitrator's retention of jurisdiction to correct errors or clarify ambiguities in an award would not conflict with the IELRB's exclusive authority to determine whether a party complied with the award under section 14(a)(8) of the Act. In this case, neither the University nor the Union disputed the content or the meaning of Dichter's award. Nor did any party request that Dichter clarify or correct the award. Instead, the Union specifically requested that Dichter determine whether the University complied with the July 2017 award and to order a supplemental award if necessary. In fact, at the January 2018 hearing, Dichter explicitly stated that the purpose of the hearing was to resolve "the Union's contention *** that the University has failed to comply with the requirements of my earlier award." These actions went far beyond resolving a dispute "regarding the meaning, application, and implementation of that remedy." (Internal quotation marks omitted.) See Elkouri & Elkouri, *supra*, at 7-50. Accordingly, we conclude the IELRB erred as a matter of law in determining that Dichter was authorized to decide whether the University complied with the July 2017 arbitration award.

¶ 36                              C. Dichter's Contractual Authority

¶ 37     "An arbitrator exceeds his powers when he decides matters which were not submitted to him." *Hollister Inc. v. Abbott Laboratories*, 170 Ill. App. 3d 1051, 1060, 524 N.E.2d 1035, 1040 (1988). "[T]he scope of an arbitrator's power is governed by the agreement between the parties submitting the matter to arbitration." *Id.* at 1061. Furthermore, under the doctrine of *functus officio*, "once arbitrators issue an award, their powers end and they have no authority or jurisdiction thereafter to modify, annul, revoke or amend the award; nor can they make a new award on the same issue." *Id.* at 1057.

> " '[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.' " *American Federation of State, County & Municipal Employees v. Illinois*, 124 Ill. 2d 246, 255, 529 N.E.2d 534, 538 (1988) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

¶ 38     Here, the IELRB further erred as a matter of law when it concluded Dichter had the contractual authority to determine whether the University complied with the July award. We acknowledge the CBA incorporates the rules and procedures of the American Arbitration

Association, which authorizes the arbitrator to "rule on his or her own jurisdiction, including any objections with respect to the *** scope of the arbitration agreement." But, as we noted earlier, article 6.12(b) of the CBA also states that "[a]rbitration shall be confined *solely* to the application and/or interpretation of [the CBA] and the *precise* issues submitted for arbitration" and that the arbitrator "shall have *no authority* to determine *any other issue(s)*." (Emphases added.)

¶ 39    We view the above language as significant when determining whether the scope of the arbitrator's authority should be interpreted broadly or narrowly. After all, article 6.12(b) could have simply stated that "arbitration shall be confined to the application and/or interpretation of [the CBA] and the issue submitted to arbitration," but the actual sentence says much more. By including the modifiers "solely" and "precise" in that sentence, the CBA makes clear that the scope of the arbitrator's powers must be construed *narrowly*, not broadly. To conclude otherwise would render the addition of those modifiers meaningless. And if the presence of those modifiers were somehow not adequate to get this message across, the very next sentence of article 6.12(b) of the CBA makes the meaning of that article clear by stating the following: "The arbitrator shall have no authority to determine any other issue(s)."

¶ 40    Nonetheless, the IELRB maintains the untenable position that Dichter was authorized to determine whether the University complied with the July 2017 arbitration award because that issue "stemmed from" one of the initial issues submitted to arbitration. This argument is contrary to the plain language of the CBA. As stated above, the drafters of the CBA chose to confine arbitration "*solely*" to the "*precise issues*" submitted and to prohibit the arbitrator from deciding "*any other issue(s)*."

¶ 41    The parties do not dispute that the "precise" issues submitted to arbitration were whether the University complied with the layoff procedures outlined in the CBA and, if so, what the remedy should be. The IELRB's contention that whether the University complied with the July 2017 award is somehow not a new issue is confounding and indefensible. In concluding that Dichter acted within his authority, the IELRB blatantly ignored the provision of the CBA that expressly prohibited him from deciding "*any* other issues." Not only did Dichter decide an issue not submitted to him, the issue he purported to resolve was, as explained above, within the exclusive jurisdiction of the IELRB.

¶ 42    Perhaps the best demonstration of how the question of whether the University complied with the July 2017 award is a new issue, unrelated to the decision the arbitrator made as reflected in that award, is that, by definition, *all* evidence pertaining to the issue of the University's compliance would concern actions taken *after* the July 2017 award was made. That is, the award set forth what steps the University needed to take for compliance; thus, any evidence pertaining to the University's compliance would concern actions taken *after* the award was made. It simply makes no sense to try to claim that the issue of the University's compliance is somehow no different than the issues the arbitrator had to address before making the July 2017 award.

¶ 43    The IELRB is correct that "no express limitation in the [CBA] prevent[ed] the arbitrator from determining whether the University implemented the original award." However, the CBA also stated that "[n]either the Union nor the Board waives the rights guaranteed them under the [Act]." The Act guarantees the University the right to have arbitration disputes resolved by the IELRB. See *Chicago Board of Education*, 142 Ill. App. 3d at 531. Accordingly, the IELRB erred as a matter of law by concluding it was within Dichter's contractual authority to decide

whether the University complied with the July 2017 arbitration award.

¶ 44                                        D. Supplemental Award

¶ 45        Because Dichter had neither jurisdiction under the Act nor contractual authority under the CBA to determine whether the University complied with the July 2017 arbitration award, he therefore also lacked authority to issue the March 2018 supplemental award. See *Hollister*, 170 Ill. App. 3d at 1057. Thus, the IELRB also erred by determining that the March 2018 supplemental award was binding. Without a binding arbitration award, the University cannot have violated section 14(a)(8) of the Act with respect to this award as a matter of law. See 115 ILCS 5/14(a)(8) (West 2016).

¶ 46        In its opinion and order, the IELRB stated that it "may not consider matters beyond the arbitrator's findings." We agree that the IELRB may follow Dichter's findings from the July 2017 arbitration award. See *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 18, 984 N.E.2d 440 ("Where the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." (Internal quotation marks omitted.)). However, in exercising its duty to determine whether the University complied with the July 2017 award, the IELRB must necessarily consider any subsequent evidence (including any evidence presented in the proceedings before the ALJ) that is relevant to the resolution of that question.

¶ 47        Accordingly, we vacate the IELRB's opinion and remand with instructions to consider any evidence relevant to the issue of the University's compliance with the July 2017 award. In reaching this decision, we express no opinion on the issue of whether the University engaged in unfair labor practices under sections 14(a)(1) or 14(a)(8) of the Act (115 ILCS 5/14(a)(1), (a)(8) (West 2016)).

¶ 48                                        III. CONCLUSION

¶ 49        For the reasons stated, we vacate the decision of the IELRB and remand with directions to consider all the evidence relevant to whether the University complied with the July 2017 binding arbitration award.

¶ 50        Vacated and remanded with directions.