# Illinois Official Reports

## Appellate Court

***Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*,
2014 IL App (1st) 130285**

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Petitioner, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD, LYNNE O. SERED, IELRB Chairman; RONALD F. ETTINDER, GILBERT O'BRIEN, MICHAEL H. PRUETER, MICHAEL K. SMITH, Board Members; and CHICAGO TEACHERS UNION, Respondents. |
| District & No. | First District, Fifth Division Docket No. 1-13-0285 |
| Filed | June 27, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Educational Labor Relations Board erred in finding that petitioner, the Chicago Board of Education, had to arbitrate the grievances filed by the Chicago Teachers Union based on a new policy implemented by the board of education under which probationary teachers who have been nonrenewed twice or given an unsatisfactory performance rating would be designated as ineligible for rehire with a "Do Not Hire" designation placed in their personnel file, since the new policy was directly related to the board's exclusive managerial right "to choose whom to hire." |
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board, No. 2011-CA-0091-C. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

James L. Bebley, Lee Ann Lowder, and Sabrina Haake, all of Chicago Board of Education Law Department, of Chicago, for petitioner.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sharon A. Purcell, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Kurtis Hale, of Poltrock & Giampietro, and Thaddeus Goodchild and Graham Hill, both of Chicago Teachers Union, both of Chicago, for respondent Chicago Teachers Union.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justice Palmer concurred in the judgment and opinion.
Justice Gordon dissented, with opinion.

**OPINION**

¶ 1    Petitioner, the Board of Education of the City of Chicago (the Board), argues that respondent Illinois Educational Labor Relations Board (IELRB) erred in finding that petitioner was required to arbitrate grievances filed by respondent Chicago Teachers Union (Union) after "Do Not Hire" (DNH) designations were placed in the personnel files of certain nonrenewed probationary appointed teachers because the grievances concerned "its inherent managerial right to choose whom to hire."

¶ 2    The facts in the instant case are undisputed; the parties filed a stipulated record in lieu of a hearing before an administrative law judge.

¶ 3    The Union and the Board are parties to a collective bargaining agreement (CBA) with a term from 2007 to 2012. The Board alleges that on May 25, 2010, it verbally informed then-Union president Marilyn Stewart that the Board's human capital department was going to implement a new policy of designating probationary appointed teachers who have been nonrenewed twice or given an unsatisfactory performance rating as ineligible for rehire by the Board with a DNH designation placed in their personnel file. On June 3, 2010, the Board sent the Union a letter conveying this information. At the end of the 2009-10 school year, the Board began implementing its policy.

¶ 4    The Union timely filed grievances and demanded arbitration of the Board's decision in at least four grievances–three on behalf of individual probationary teachers and one on behalf of all probationary appointed teachers. All of the individual probationary appointed teachers received notice that they were being nonrenewed for the following school year with the

Chicago Public Schools, but were not informed that a DNH designation had been placed in their personnel file with the Board, preventing them from being hired within the district.

¶ 5 The individual teachers each sought different relief in their respective grievances. The first was filed on behalf of Venita Abrams under articles 3 and 24 of the CBA and past practice of the current CBA. The grievance stated that Abrams received notification on May 7, 2010, that she was being nonrenewed for her position at Ward School. She later learned that a DNH had been placed on her personnel file and "she received no notification of the 'DNH' nor was she given a reason why she has a 'DNH' placed on her file." The Union sought findings that the Board violated the CBA and past practice when it began placing DNH designations in members' files after two nonrenewals and that the Board violated the CBA and past practice when it used this practice to terminate current members who were unaware that practice was a condition of employment. The grievance noted that the Board did not cite article 34-4 regarding the placement and notification of derogatory statements in the member's personnel file and compliance with that article "did not happen." The Union requested that, to resolve the grievance, the Board remove the DNH on Abrams' file, allow Abrams to look for employment or a position she qualifies for within the Chicago Public Schools, cease the practice of placing DNH on probationary teachers' files, allow all probationary teachers affected such as Abrams to look for qualified employment within the Chicago Public Schools, and discuss any and all changes that affect working conditions and employment status with bargaining members of the Union.

¶ 6 The second grievance was filed on behalf of Carmela Rago, challenging the DNH policy as "a misapplication of and a deviation from past practice of the Board-Union Agreement." The grievance stated that on May 7, 2010, Rago received notification that she was not being reappointed as a teacher at the Schmid School for the next school year. The letter did not state that a DNH had been placed in her file. Rago asserted that the DNH "implies that she committed some hideous act of misconduct." She stated that that the DNH policy was adopted over a month after she had received her termination letter, and therefore, the Board erred and she should be allowed to continue her employment with the Chicago Public Schools. The Union requested that Rago be immediately restored to a teaching position at Schmid School, including whatever relief is necessary to make Rago whole, and cease and desist from creating policies that violate the CBA.

¶ 7 The third individual grievance was filed on behalf of Gregory Bess and contended that the Board violated articles 3, 23, 36, 38, 39, and 42 of the CBA. The grievance stated that Bess "was not reassigned and a [DNH] was placed in his personnel file." The Union requested that Bess be restored to his teaching position at Hirsch High School and he be made whole by being paid any lost salary and monies spent to keep his benefits.

¶ 8 The final grievance was filed by the Union on behalf of all affected probationary teachers based on articles 3, 23-2.1, 38-4 of the CBA, the Illinois School Code (105 ILCS 5/34-84 (West 2010)), and a deviation from past practice and policy. "The grievance is in regard to placing a [DNH] label in bargaining unit members personnel files and records which indicates that they should not be rehired into the system." The Union contended that "in some instances, when principals have attempted to reinstate a member at their school, they were told by the Chicago Public Schools that they can not hire the member because the member is on a [DNH] list." As in Abrams' grievance, the Union noted that the Board did not cite

article 34-4 regarding the placement of derogatory statements in the member's personnel file and compliance with that article "did not happen."

¶ 9        Also similar to Abrams' grievance, the Union sought findings that the Board violated the CBA, the Illinois School Code, and past practice when it placed DNH designations on members' files when they clearly were offered positions by the principal and that the Chicago Public Schools violated the CBA, the Illinois School Code, and past practice when it used this process to terminate members who were currently in the system and unaware that this practice was a condition of employment. The Union requested that the Board cease the practice of placing DNH designations on members if the termination was not for cause, remove members from the DNH list, notify all members in writing that they have received a DNH designation, give the Union a list of all members on the DNH list, allow all affected bargaining members to seek employment within the Chicago Public Schools, and discuss any and all changes that affect the working conditions and employment status of bargaining members with the Union.

¶ 10       In March 2011, the Board notified the Union in writing that it refused to arbitrate the grievances, stating that "it [was] convinced that the subject matter [was] excluded from arbitration." In response, the Union filed an unfair labor practice charge against the Board, alleging that the Board had violated section 14(a)(1) of the Illinois Educational Labor Relations Act (the Act), which prohibited the Board from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under" the Act. 115 ILCS 5/14(a)(1) (West 2010).

¶ 11       In December 2011, following an investigation, the Executive Director of the Illinois Educational Labor Relations Board issued a complaint. In its answer, the Board raised as a defense that "the relief requested makes it clear that the Union is attempting to require the Board to hire non-employees whom the Board does not believe it should hire," which was a violation of section 4 of the Act and article 48 of the CBA, both of which "make it clear that the Board's hiring decisions are exclusive management rights over which the Board does not have to bargain or arbitrate."

¶ 12       In March 2012, the parties filed a stipulated record in lieu of a hearing before an administrative law judge. In April 2012, the administrative law judge certified that there were no determinative issues of fact requiring an administrative law judge's recommended decision and ordered the case removed to the IELRB. In December 2012, the IELRB issued a written opinion and order in which it found that the Board had violated section 14(a)(1) of the Act.

¶ 13       Under the CBA, the grievance procedure is outlined in article 3 and defines "grievance" as "a complaint involving a work situation; a complaint that there has been a deviation from, misinterpretation of or misapplication of a practice or policy; or a complaint that there has been a violation, misinterpretation or misapplication of any provisions of this Agreement." Article 3-5 of the CBA provides for binding arbitration as part of the grievance procedure.

¶ 14       Article 34-4 concerns personnel files and provides:

"No derogatory statement about a teacher or other bargaining unit member originating outside of the Chicago public school system shall be placed in the teacher's or other bargaining unit member's personnel file, provided, further, that any official report or statement originating within the Chicago public school system may be placed in the teacher's or other bargaining unit member's personnel file only if the

teacher or other bargaining unit member is sent a dated copy thereof at the same time. The teacher or other bargaining unit member may respond and such response shall be attached to the filed copy."

¶ 15        Article 48-2 concerns management rights and provides:

"The BOARD shall not be required to bargain over matters of inherent managerial policy within the meaning of the Illinois Educational Labor Relations Act or Illinois School Code, which shall include such areas of discretion or policy as the functions of the BOARD, standards of service, its overall budget, the organizational structure and selection of new employees and direction of employees; provided, that in order to preserve the rights of the parties predating this Agreement, the BOARD shall be required to bargain collectively with regard to any matter concerning wages, hours or conditions of employment about which they have bargained for and agreed to in a collective bargaining agreement prior to the date of this Agreement; provided further, that nothing herein shall affect the rights of the UNION or any employee under Article 3 of this Agreement. The BOARD, however, shall be required to bargain collectively with the UNION with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by the UNION."

¶ 16        The IELRB noted that there was no express language excluding the matter from arbitration. By contrast, the language in the grievance clause was broad and contained no specific exclusions; the IELRB pointed out that "[t]he definition of a grievance in this case allows for a grievance to be arbitrated as long as it involves a work situation, regardless of whether the grievance can be tied to specific language in the collective bargaining agreement." Additionally, two of the filed grievances specifically stated that the contractual requirements for placement of derogatory documents in teachers' personnel filed were not satisfied. The IELRB also concluded that section 4 of the Act did not preclude arbitration of the grievances because it was not applicable, since it "address[ed] bargaining, not arbitration." Thus, the IELRB found that, pursuant to the Act and the parties' CBA, the Board had a duty to arbitrate the grievances and, by refusing to proceed to arbitration, the Board violated section 14(a)(1) of the Act.

¶ 17        This appeal followed.

¶ 18        On appeal, the Board argues that the IELRB erred in concluding that the Board had a duty to arbitrate the grievances under the CBA because the Board has an inherent managerial right over hiring decisions that is excluded from arbitration. The Union and the IELRB maintain that the IELRB's decision was correct and the Board is obligated to arbitrate the grievances under the CBA.

¶ 19        The Administrative Review Law provides that judicial review of an administrative agency decision "shall extend to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110 (West 2010). "The standard of review, 'which determines the degree of deference given to the agency's decision,' turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)). We review an agency's conclusion on a question of law *de novo*, but we are not bound by the agency's interpretation of a statute. *Id*. A decision

involving a question of fact is afforded deference and will not be reversed unless it is against the manifest weight of the evidence. *Id.* at 471-72. "A mixed question of law and fact asks the legal effect of a given set of facts." *Id.* at 472. "An agency's conclusion on a mixed question of law and fact is reviewed for clear error." *Id*. Here, the administrative law judge found that there were no determinative issues of fact and the IELRB agreed with that conclusion and only considered legal issues. Accordingly, we review the legal issues *de novo*.

¶ 20    Section 14(a)(1) of the Act prohibits "[e]ducational employers, their agents or representatives" from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2010). A school district's refusal to submit to binding arbitration under a CBA is a violation of section 14(a)(1) of the Act. *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 24 (2007) (citing 115 ILCS 5/14(a)(8) (West 2004), and *Board of Education of Community School District No. 1, Coles County v. Compton*, 123 Ill. 2d 216, 221 (1988)). However, refusal is considered an appropriate method to challenge the arbitrability of the issue. *Id.* "There are two grounds for challenging arbitrability: (1) there is no contractual agreement to arbitrate the substance of the dispute; and (2) the dispute is not arbitrable under section 10(b) of the Act (115 ILCS 5/10(b) (West 2004)) because the subject matter of the dispute conflicts with other Illinois law." *Id.* Our review of the arbitrability of the grievance gives no consideration to the merits of the underlying grievance. *Rock Island County Sheriff v. American Federation of State, County & Municipal Employees, AFL-CIO, Local 2025*, 339 Ill. App. 3d 295, 298 (2003). We first consider whether there was a contractual agreement to arbitrate the grievances at issue concerning the DNH designations on twice nonrenewed probationary teachers.

¶ 21    "In determining whether a school district is required to arbitrate a grievance, the IELRB must examine whether the grievance falls within the terms of the collective bargaining agreement." *Cobden Unit School District No. 17 v. Illinois Educational Labor Relations Board*, 2012 IL App (1st) 101716, ¶ 19. "The mere existence of a dispute between an employee and an employer does not make the disputed matter subject to the arbitration procedures of a collective bargaining agreement." *Id.*

¶ 22    "The appellate court has stated that probationary teachers 'have no specific right to be retained by the school board.' " *Id.* ¶ 21 (quoting *Lockport Area Special Education Cooperative v. Lockport Area Special Education Cooperative Ass'n*, 33 Ill. App. 3d 789, 794 (1975)). "While a district may agree to certain procedural limitations in a collective bargaining agreement, the power of the school board not to renew the employment of probationary teachers cannot be delegated or limited." *Id.* (citing *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 446 (1995)). "There appears to be unlimited power in the boards to dismiss probationary teachers at the board's discretion, while the power to dismiss tenure teachers is considerably restricted." *Lockport*, 33 Ill. App. 3d at 792. "A school board's statutory authority to dismiss a nontenured teacher during the probationary period is discretionary and does not require a showing of just cause." *Niles Township*, 379 Ill. App. 3d at 27 (granting school board authority " 'to dismiss any teacher whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it' " (quoting 105 ILCS 5/10-22.4 (West 2004))).

¶ 23      Here, the issue is whether the Board is required to arbitrate grievances filed in response to its policy of designating probationary appointed teachers as ineligible for rehire after being nonrenewed twice or given an unsatisfactory performance rating. The Board contends that article 48-2 of the CBA and section 4 of the Act excluded the grievances at issue from arbitration. We first look at whether the CBA excludes the grievances.

¶ 24      Article 48-2 of the CBA expressly excludes matters of "inherent managerial policy," including the selection of new employees from the bargaining process. According to the Board, the decision to designate probationary teachers as ineligible for rehire after having been nonrenewed twice falls under the auspices of its "inherent managerial policy" for "the selection of new employees."

¶ 25      The IELRB found section 4 of the Act and article 48-2 of the CBA to be inapplicable because each addressed the Board's bargaining power, not arbitration. However, the Supreme Court has noted that "arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960). Further, in one of its decisions, the IELRB has observed that "[a]rbitration is not a procedure independent of collective bargaining, but rather is a component and extension of the collective bargaining process." *Chicago School Reform Board of Trustees*, 15 PERI 1077 (IELRB 1999). "The duty to bargain in good faith does not end with the execution of the written agreement and is not limited strictly to the negotiation of the labor contract. Rather, it includes the interpretation, administration and enforcement of the agreement as well." *Id.* Therefore, since arbitration is considered part of the bargaining process, a school district cannot be required to arbitrate a matter that is excluded from the bargaining process.

¶ 26      The Illinois Supreme Court has set forth a three-part balancing test to determine whether a matter is subject to mandatory bargaining or not.

> "The first part of the test requires a determination of whether the matter is one of wages, hours and terms and conditions of employment. This is a question that the IELRB is uniquely qualified to answer, given its experience and understanding of bargaining in education labor relations. If the answer to this question is no, the inquiry ends and the employer is under no duty to bargain.
>
> If the answer to the first question is yes, then the second question is asked: Is the matter also one of inherent managerial authority? If the answer to the second question is no, then the analysis stops and the matter is a mandatory subject of bargaining. If the answer is yes, then the hybrid situation discussed in section 4 exists: the matter is within the inherent managerial authority of the employer and it also affects wages, hours and terms and conditions of employment.
>
> At this point in the analysis, the IELRB should balance the benefits that bargaining will have on the decisionmaking process with the burdens that bargaining imposes on the employer's authority. Which issues are mandatory, and which are not, will be very fact-specific questions, which the IELRB is eminently qualified to resolve." *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 523 (1992).

¶ 27      The Board contends that under this balancing test, the question of whether it is permitted to designate nonrenewed probationary teachers as ineligible for rehire does not involve a question of wages, hours, or terms and conditions of employment. "A term or condition of

employment is something provided by an employer that intimately and directly affects the work and welfare of employees and that has become a mandatory subject of bargaining." *Thornton Fractional High School District No. 215 v. Illinois Educational Labor Relations Board*, 404 Ill. App. 3d 757, 763 (2010). Terms and conditions of employment include wages, health insurance, life insurance, pension contributions, and hours. *Vienna School District No. 55 v. Illinois Educational Labor Relations Board*, 162 Ill. App. 3d 503, 507 (1987).

¶ 28    Here, the subject of the grievances clearly relates to the Board's ability to make hiring decisions, which is a matter of managerial policy, and not a matter of wages, hours or terms and conditions of employment. We point out that the relief sought by employees in some of the grievances was to be reinstated in their jobs and had little if anything to do with the placement of the DNH in their personnel files. Though some of the grievances cited article 34-4 of the CBA regarding the placement of derogatory statements in a bargaining unit's personnel file, none of the grievances requested the opportunity to provide a response to the DNH designation. Under both article 48-2 of the CBA and section 4 of the Act, the Board has the "inherent managerial policy" over the selection of employees. All of the grievances sought relief that would undermine the Board's right to set forth its policy for selection of employees. In these situations, the Board set a policy not to hire certain probationary teachers. This is a policy matter and not subject to arbitration.

¶ 29    We disagree with the IELRB's conclusion that the broad language of the grievance clause of the CBA renders the grievances subject to arbitration. As previously mentioned, the CBA's definition of "grievance" is "a complaint involving a work situation; a complaint that there has been a deviation from, misinterpretation of or misapplication of a practice or policy; or a complaint that there has been a violation, misinterpretation or misapplication of any provisions of this Agreement." While we agree that this language is broad, we do not believe the definition requires the Board to arbitrate matters that are excluded from the bargaining process under the CBA, including its managerial policy in selecting employees. Further, the interpretation by the IELRB would subject all grievances to arbitration because "a complaint involving a work situation" would encompass nearly every conceivable complaint. The CBA was not intended to provide arbitration for excluded matters and we decline to construe the definition as requiring otherwise. "For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Here, the Board did not agree to submit matters of "inherent managerial policy," including the selection of its employees to arbitration.

¶ 30    Further, article 23-2 details the requirements for probationary teachers. Article 23-2.1 states that "[p]robationary teachers shall be appointed on a school-year basis." According to article 23-2.2, probationary teachers shall receive written notice at least 30 calendar days before the end of the school year as to whether they will be reappointed for the following school year, and for teachers completing their first or second year of probationary services, "[s]uch notice does not need to provide a reason for the nonrenewal of the probationary teacher's employment." Under the CBA, probationary teachers have no contractual entitlement to employment beyond each school year. When the probationary teachers were nonrenewed, the Board was only required to give notice of the nonrenewal at least 30 days before the end of the school year, which was done in this case. The relief requested in the

grievances is aimed at being reappointed as a probationary teacher, which the grievants were not entitled to under the CBA.

¶ 31    We are not persuaded by the Union's assertion that the Board "bargained away the right to designate nonrenewed probationary teachers as ineligible-for-rehire for a period of at least ten school months." The Union refers to article 23-2.4 for this argument. However, article 23-2.4 only provides that if a probationary teacher is reappointed within 10 months of a nonrenewal, then the teacher will not suffer a break in service for purposes of the "consecutive years" requirement for achieving tenure. Article 23-2.4 does not offer a form of temporary reprieve from nonrenewal, but only offers a benefit for a probationary teacher who is reappointed. Further, this provision would be inapplicable to a probationary teacher who is designated a DNH because he or she cannot be reappointed.

¶ 32    The Union also cites article 38-4 of the CBA for support. However, article 38-4 makes no reference to nonrenewed probationary teachers. Rather, this article governs probationary teachers who have been "released" due to closures, drop in enrollment or a change in educational focus. In those instances, the released probationary teachers are afforded certain benefits, such as retention based on seniority, no service break if reappointed within 10 months, and an assignment to the cadre of substitute teachers. None of the grievants asserted that their nonrenewal was a release governed by this article. This article applies only in the specified instances and does not apply to a nonrenewed probationary teacher.

¶ 33    We also observe that at the time the DNH policy was to be instituted (the end of the 2009-10 school year), the individual grievants had already received notice that they were not being renewed as teachers for the next school year. The Board was not required to provide a reason for the nonrenewal, nor were the grievants entitled to employment beyond the current school year. Further, though the Union asserts that the Board violated its past practice in the grievances, the Union fails to clearly articulate what past practice as it relates to nonrenewed probationary teachers was violated. The Union has not shown that a practice existed to rehire probationary teachers who had received an unsatisfactory performance rating or who had been nonrenewed twice. The only practice agreed to in the CBA is that the notification of nonrenewal must be received at least 30 days before the end of the school year and if such notice was not received, then the probationary teacher is to be reappointed.

¶ 34    Moreover, we find that grievances are inarbitrable under section 10(b) of the Act. Section 10(b) provides:

> "The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." 115 ILCS 5/10(b) (West 2010).

"This statute precludes the parties from implementing a provision in a collective-bargaining agreement if it would be in violation of, or inconsistent or in conflict with other Illinois statutes." *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board*, 200 Ill. App. 3d 370, 378 (1990).

¶ 35    The Board has asserted that section 4 of the Act precludes arbitration in this case. Section 4 provides, in relevant part:

> "Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the

employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees." 115 ILCS 5/4 (West 2010).

¶ 36    The statutory language mirrors the language in article 48-2 of the CBA and, thus, we reach the same conclusion here. As we previously concluded, the Board is not required to arbitrate matters of inherent managerial policy that were expressly excluded from the bargaining process.

¶ 37    Additionally, section 10-22.4 of the Illinois School Code authorizes a school district to dismiss a teacher "whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24-10 to 24-15, inclusive." 105 ILCS 5/10-22.4 (West 2010). The grievances in this case seek to force the Board to hire probationary teachers it determined were not qualified to teach, which conflicts with the Board's statutory authority under section 10-22.4. See *Cobden*, 2012 IL App (1st) 101716, ¶ 41 (finding that a school board was not required under section 10-22.4 to provide a nonrenewed probationary teacher with cause or reasons for his nonrenewal).

¶ 38    We find further support for our conclusion in the *Lockport* and *Midwest* decisions. In *Lockport*, a probationary teacher was given proper notice that she was not being rehired for the following school year and filed a grievance against the school board seeking binding arbitration. The teacher's union asserted that the nonrenewal constituted discipline and under the collective bargaining agreement, the school board needed to show just cause. The school board filed a declaratory judgment action regarding the arbitration and grievance procedures. The trial court found that the reasons for dismissing a probationary teacher were not proper subjects for arbitration under the collective bargaining agreement. The reviewing court agreed. *Lockport*, 33 Ill. App. 3d at 790-91.

¶ 39    The *Lockport* court found:

    "As we view the agreement, the determination of whether or not just cause exists is not a procedural question, but is in fact the very issue at the heart of the exercise of the Board's discretion. To permit that determination to be made by an arbitrator, in a manner which would be binding on all concerned, is to effectively delegate to the arbitrator the power to retain or dismiss probationary teachers." *Id.* at 792.

¶ 40    The court further reasoned:

    "In interpreting the agreement and of paramount significance, is the fact that the right and power of the Board to retain or dismiss probationary teachers is a substantive and crucial aspect of the Board's general authority to oversee the education system in its district. It is an essential part of the Board's public duty to use only the most qualified teachers for the education of the district children. To carry out this purpose, the Board is authorized to try out teachers for one or two years with no continuing obligation, and then to retain or dismiss the teachers as the Board determines, in its discretion, to be in the best interests of the children to be educated." *Id*. at 794.

¶ 41    Similarly, in *Midwest*, a probationary teacher received notice that she would not be renewed for the next school year and the teacher's union began grievance procedures, asserting that the teacher's nonrenewal lacked just cause, the offenses were remediable, and the school district failed to set forth progressive discipline in the collective bargaining

- 10 -

agreement. *Midwest*, 277 Ill. App. 3d at 442-43. The parties proceeded to arbitration and the arbitrator held that the matter was arbitrable and despite his finding that the collective bargaining agreement did not require just cause for nonrenewal of probationary teachers, the arbitrator found the district failed to give the teacher notice and failed to utilize progressive discipline in this case and then ordered the teacher to be reinstated. *Id.* at 443. The IELRB reversed the arbitrator's award, finding that the remedy violated section 10(b) of the Act because "the power to renew a nontenured teacher was reserved exclusively to the District's discretion." *Id.* at 444.

¶ 42 On appeal, the reviewing court agreed with the IELRB. "The School Code grants the school board alone the duty to appoint teachers, and a broad power to terminate their employment, either by dismissal or the nonrenewal of their probationary contracts." *Id.* at 446. The court reasoned that by ordering the district to renew the probationary teacher despite its decision not to do so, "the arbitrator undermined authority specifically and exclusively reserved for the school board under the School Code: specifically, to discharge a nontenured teacher whenever, 'in its opinion, [she] is not qualified to teach, or whenever, in its opinion, the interests of the schools require it.' " *Id.* at 446-47 (quoting 105 ILCS 5/10-22.4 (West 1992)). The court found that allowing the arbitrator to order reinstatement of the probationary teacher "would be in clear derogation of the policy contemplated under the School Code." *Id.* at 447.

¶ 43 We also find the decision in *Staunton*, relied on by the Union, to be easily distinguishable. In that case, a teacher filed a grievance seeking a designation as a full-time teacher because she was assigned a full-time teacher schedule, but was designated as a part-time teacher. *Staunton*, 200 Ill. App. 3d at 373. Unlike the present case, the grievance did not involve a question of hiring decisions, but was limited to salaries and work assignments. Further, the reviewing court's conclusion that the specific grievance was not expressly excluded from the broad arbitration clause has no bearing on the board's right to retain hiring rights as a matter of inherent managerial policy. See *Staunton*, 200 Ill. App. 3d at 378.

¶ 44 Here, the probationary teachers are seeking reinstatement, a remedy that is in derogation of the School Code and a decision that belongs solely to the Board. Since probationary teachers are employed on a school-year basis and the Board is vested with the selection of its employees as a matter of "inherent managerial policy," the grievances at issue are inarbitrable under both the CBA and section 10(b) of the Act. Further, we find that it was within the Board's authority to institute the policy to place a DNH indication in the files for certain probationary teachers following two nonrenewals or an unsatisfactory performance rating because this policy directly relates to its exclusive right to determine its hiring guidelines and is not subject to grievances. We hold that the IELRB erred in finding that the Board violated section 14(a)(1) of the Act and the Board was not obligated to arbitrate the grievances at issue.

¶ 45 Based on the foregoing reasons, we reverse the decision of the Illinois Educational Labor Relations Board and remand for further proceedings consistent with this decision.

¶ 46 Reversed and remanded.

¶ 47    PRESIDING JUSTICE GORDON, dissenting.

¶ 48    I must respectfully dissent. In this case, there is a narrow issue concerning whether petitioner Board of Education of the City of Chicago (the Board) committed an unfair labor practice when it refused to arbitrate four grievances by the Chicago Teachers Union (the Union) concerning the Board's decision to place "Do Not Hire" designations in the personnel files of certain probationary teachers, which the Union and the teachers claimed violated the CBA between the Union and the Board. This is not a case where the arbitration process would decide whether these teachers should be rehired; I agree with the majority that such a decision is solely within the Board's discretion. Instead, this case is about the narrow issue of whether placement of the "Do Not Hire" designations in the teachers' files violated the CBA by, *inter alia*, not giving the teachers the opportunity to respond.

¶ 49    The Illinois Educational Labor Relations Board (IELRB) found that the Board committed an unfair labor practice when it refused to arbitrate this issue; the IELRB decision did not contain any suggestion that the teachers should be rehired. On direct appeal to this court pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994) and section 3-113 of the Code of Civil Procedure (735 ILCS 5/3-113 (West 2010)), the Board argues that the dispute was not arbitrable. Although I am mindful of the Board's intentions not to hire bad teachers, I do not believe that by arbitrating this narrow issue, it will in any way affect that policy. I also realize that if the "Do Not Hire" designation is placed on a probationary teacher's file wrongfully, that person would never have the opportunity to tell his or her side of the story without the arbitration process. Accordingly, for the reasons that follow, I would confirm the IELRB's decision.

¶ 50    On appeal, the sole issue before us is whether the IELRB properly concluded that the Board's refusal to arbitrate the placement of the "Do Not Hire" designation constituted an unfair labor practice. Pursuant to section 14(a)(1) of the Act, an unfair labor practice can be found where an educational employer interferes with, restrains, or coerces an employee in the exercise of the rights guaranteed to him under the Act. 115 ILCS 5/14(a)(1) (West 2010). An employer's refusal to arbitrate a grievance considered arbitrable under a collective bargaining agreement or the law constitutes an unfair labor practice. *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board*, 173 Ill. App. 3d 395, 408-09 (1988); see also *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 24 (2007).

¶ 51    "An educational employer is not required to arbitrate a dispute that it did not contractually agree to arbitrate or that is not arbitrable under section 10(b) [citation] of the Act." *Chicago Teachers Union, Local 1 v. Illinois Educational Labor Relations Board*, 344 Ill. App. 3d 624, 636 (2003); *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 522, 530 (2000). Thus, we must first consider whether the parties agreed to arbitrate the matter under the terms of the CBA and, if so, we must then consider whether the matter is arbitrable under section 10(b) of the Act. Since there are no issues of fact, our review in the case at bar is *de novo*. *Niles Township*, 379 Ill. App. 3d at 26 ("[O]ur inquiry is whether the grievances, as alleged, are, as a matter of law, subject to arbitration under the CBA. [Citation.] If they are, we must then address whether arbitration of the grievances is prohibited under section 10(b) of the Act. Our review is *de novo*."). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). The majority

- 12 -

concludes that the grievances are excluded from arbitration. I reach the opposite conclusion. I again note that I agree that the decision not to rehire the teachers is not arbitrable.

¶ 52                                      I. Arbitration Under the CBA

¶ 53    "[A]n agreement to arbitrate disputes will be found where the collective bargaining agreement contains a broad grievance clause without any specific exclusions unless there is forceful evidence of an intent to exclude a particular claim from arbitration." *Chicago School Reform Board*, 315 Ill. App. 3d at 532 (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)). When determining whether a grievance is arbitrable, " '[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.' " *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board*, 200 Ill. App. 3d 370, 377 (1990) (quoting *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567-58 (1960)). Indeed, "[t]his court's opinion of the merits of the grievance is immaterial. [Citation.] The issue of whether the law requires arbitration must be kept separate from an analysis of the merits of the underlying claim. A court should not rule on or be influenced by the merits of the dispute. This holds true even if one party's underlying claim is frivolous. [Citation.]" *Rock Island County Sheriff v. American Federation of State, County & Municipal Employees, AFL-CIO, Local 2025*, 339 Ill. App. 3d 295, 298 (2003).

¶ 54    In the case at bar, article 3 of the CBA governs the grievance procedure and defines "grievance" as "a complaint involving a work situation; a complaint that there has been a deviation from, misinterpretation of or misapplication of a practice or policy; or a complaint that there has been a violation, misinterpretation or misapplication of any provisions of this Agreement." Article 3 further provides that the grievance procedure culminates in binding arbitration. The Union and the IELRB argue that this language encompasses the alleged violations at issue in the case at bar.[1]

¶ 55    I agree with the Union and the IELRB that the CBA's definition of "grievance" encompasses the conduct at issue in the case at bar. The Union filed four grievances, three on behalf of individual probationary teachers who had received "Do Not Hire" designations and one on behalf of all probationary appointed teachers. Three of the grievances specifically stated that probationary teachers were not informed of the "Do Not Hire" policy and did not receive notice that such designations had been placed in their files. These grievances point to specific provisions of the CBA that were allegedly violated, including the provision requiring the teacher to be notified of any derogatory statements placed in his or her file with an opportunity to respond. For instance, the grievance on behalf of Venita Abrams stated that it was based on "Articles 3, 24 and past practice of the current Board-Union agreement" and also cited article 34-4 of the CBA, which concerns personnel files and provides: "No derogatory statement about a teacher or other bargaining unit member originating outside of the Chicago public school system shall be placed in the teacher's or other bargaining unit member's personnel file, provided, further, that any official report or statement originating

_____

[1]In its brief on appeal, the Board expressly states that it "does not dispute that the CBA contains a broad grievance clause."

within the Chicago public school system may be placed in the teacher's or other bargaining unit member's personnel file only if the teacher or other bargaining unit member is sent a dated copy thereof at the same time. The teacher or other bargaining unit member may respond and such response shall be attached to the filed copy." The grievance on behalf of Gregory Bess stated that it was based on violations of "Articles 3, 23, 36, 38, 39 and 42 of the Board-Union Agreement." The grievance filed by the Union on behalf of all probationary appointed teachers stated that it was based on violations of "Articles 3, 23-2.1, 38-4 of the collective bargaining agreement" and section 34-8.1 of the School Code, and also cited article 34-4 of the CBA. These grievances are clearly "complaint[s] that there has been a violation, misinterpretation or misapplication of any provisions of this Agreement." Furthermore, even notwithstanding the allegations concerning specific provisions of the CBA, the definition of "grievance" broadly includes "a complaint involving a work situation." Thus, I agree with the IELRB's conclusion that, under the language of the CBA, a grievance may be arbitrable even if it cannot be tied to specific language in the CBA as long as it involves a "work situation." The Board argues that because the probationary teachers were "let go," there is no work situation. I find that this argument is not persuasive because the "Do Not Hire" designation is being placed in the personnel files allegedly because the evaluation of the probationary teachers' conduct during work situations was below par. Consequently, under the CBA, the grievances are arbitrable.

¶ 56    The Board, however, argues that the Union's grievances are inarbitrable because the Board reserved a managerial right to establish performance standards and select employees in article 48 of the CBA, which provides, in relevant part: "The BOARD shall not be required to bargain over matters of inherent managerial policy within the meaning of the Illinois Educational Labor Relations Act or Illinois School Code, which shall include such areas of discretion or policy as the functions of the BOARD, standards of service, its overall budget, the organizational structure and selection of new employees and direction of employees ***." The Board claims that, reading the language of the CBA as a whole, "the express reservation in the management-rights clause of the agreement trumps the general language in the grievance provision." Although the majority agrees with the Board's argument, I do not find this argument persuasive with regard to the portion of the grievances alleging procedural violations of the CBA for the following reasons.

¶ 57    First, as the IELRB notes, the grievance clause does not merely contain "general language" as argued by the Board but instead contains purposely *broad* language. Presumably, the parties were aware of the terms of the CBA when they agreed to it, including the fact that "grievance" is defined broadly. Additionally, as noted, "an agreement to arbitrate disputes will be found where the collective bargaining agreement contains a broad grievance clause without any specific exclusions unless there is forceful evidence of an intent to exclude a particular claim from arbitration." *Chicago School Reform Board*, 315 Ill. App. 3d at 532 (citing *Warrior & Gulf*, 363 U.S. at 584-85). Here, I cannot find that the management rights clause provides "forceful evidence" of an intent to exclude all issues concerning the "Do Not Hire" designation from arbitration. I agree that the Board has the sole right not to rehire these probationary teachers; however, if a "Do Not Hire" designation is placed in one of their files wrongfully, that teacher would have no recourse whatsoever, and no one will have heard his or her side of the story.

¶ 58 Next, I believe that the instant case is analogous to *Staunton*, in which the appellate court found a grievance arbitrable despite the presence of a management rights clause similar to that at issue here. In *Staunton*, the court considered whether a grievance from a part-time teacher seeking full-time status was arbitrable. *Staunton*, 200 Ill. App. 3d at 372. The school district argued that the subject was excluded from arbitration, pointing to the management rights clause, in which it reserved the right to direct and assign its employees and regulate work schedules. *Staunton*, 200 Ill. App. 3d at 376. The appellate court noted that "[t]he collective-bargaining agreement in this case contained a broad arbitration clause, requiring arbitration of any contract violation. Additionally, there was no contract language expressly excluding any subject from the arbitration requirement." *Staunton*, 200 Ill. App. 3d at 378. Thus, the court concluded: "Any exclusion from arbitration must be expressly stated in the contract. The presence of the management-rights and zipper clauses in this contract did not render this dispute inarbitrable. Express language, excluding from arbitration the assignment of teachers to full-time or part-time employment, was necessary." *Staunton*, 200 Ill. App. 3d at 378.

¶ 59 Similarly, in the case at bar, there was no express language excluding this matter from arbitration. Accordingly, I agree with the IELRB that the portion of the grievances alleging violations of the CBA were arbitrable under the terms of the CBA. Apparently, the majority refuses to follow *Staunton* and its precedent.

¶ 60 Instead, the majority finds *Staunton* "easily distinguishable," noting that "[u]nlike the present case, the grievance did not involve a question of hiring decisions, but was limited to salaries and work assignments." *Supra* ¶ 43. The majority's comment misses the point. *Staunton* is instructive because it concerns a finding of arbitrability despite the existence of a management rights clause similar to that at issue here. While the grievance there "was limited to salaries and work assignments" (*supra* ¶ 43), in the management rights clause, "the District reserved the right to direct and assign its employees and to regulate work schedules" (*Staunton*, 200 Ill. App. 3d at 376). Thus, like here, the *Staunton* court was required to determine whether the issues raised in the grievance fell within the scope of the management rights clause, given the existence of a broad arbitration clause.

¶ 61 Additionally, the majority also dismisses *Staunton* by stating that "the reviewing court's conclusion that the specific grievance was not expressly excluded from the broad arbitration clause has no bearing on the Board's right to retain hiring rights as a matter of inherent managerial policy." *Supra* ¶ 43. Again, I agree that the Board has the sole right not to rehire these probationary teachers. However, several of the grievances allege specific procedural violations of the CBA. If such procedural violations are not arbitrable, then if a "Do Not Hire" designation is placed in one of their files wrongfully, that teacher would have no recourse whatsoever.

¶ 62 Finally, I find the Board's reliance on *Cobden Unit School District No. 17 v. Illinois Educational Labor Relations Board*, 2012 IL App (1st) 101716, to be unpersuasive. There, as in *Niles Township*, the majority also found that the procedural violations alleged by the grievances were not actually required under the CBA at issue. *Cobden*, 2012 IL App (1st) 101716, ¶¶ 23-31. As noted, the language in the grievances at issue in the case at bar allege violations that are supported by the plain language of the CBA. Additionally, the *Cobden* court concluded that one of the grievances concerning nonrenewal of a teacher without just cause conflicted with the school district's statutory authority to dismiss a nontenured teacher.

*Cobden*, 2012 IL App (1st) 101716, ¶ 35. However, the instant case does not involve a challenge to a probationary teacher's dismissal without just cause. Instead, the instant case concerns the narrow issue of whether the Board complied with procedural requirements included in the CBA. That narrow issue is arbitrable under the language of the CBA according to the law as made and provided.

¶ 63    I must note that the majority's interpretation of the management-rights clause in the instant case is a further step in an already-troubling line of cases, including *Niles Township* and *Cobden*. In finding the grievances excluded under the CBA, the majority writes: "Here, the subject of the grievances clearly relates to the Board's ability to make hiring decisions, which is a matter of managerial policy, and not a matter of wages, hours or terms and conditions of employment. We point out that the relief sought by employees in some of the grievances was to be reinstated in their jobs and had little if anything to do with the placement of the DNH in their personnel files. Though some of the grievances cited article 34-4 of the CBA regarding the placement of derogatory statements in a bargaining unit's personnel file, none of the grievances requested the opportunity to provide a response to the DNH designation. Under both article 48-2 of the CBA and section 4 of the Act, the Board has the 'inherent managerial policy' over the selection of employees. All of the grievances sought relief that would undermine the Board's right to set forth its policy for selection of employees." *Supra* ¶ 28. Although I dissented in both *Cobden* and *Niles Township*, the majority in those cases at least acknowledged that procedural violations could render a grievance arbitrable. See, *e.g.*, *Niles Township*, 379 Ill. App. 3d at 33 ("We do not imply that a teacher grievance alleging a violation of a collective bargaining agreement–such as improper record keeping–cannot be decided in an arbitration forum. It clearly can ***."). Here, by contrast, although the majority notes that three of the four grievances specifically allege procedural violations (that the teachers were not notified of the placement of the derogatory statements in their personnel files), the majority finds the grievances excluded from arbitration because the subject of the grievances "relates to the Board's ability to make hiring decisions" and the relief requested "had little if anything to do with the placement of the DNH in their personnel files." *Supra* ¶ 28. Thus, the majority has rendered inarbitrable any grievances in which the subject "relates to the Board's ability to make hiring decisions," regardless of whether the grievance expressly cites a procedural violation under the CBA–a position which is much broader than ever made in previous cases–and has also taken it upon itself to subjectively determine whether the relief requested has too "little *** to do" with the procedural violation to be entitled to arbitration. *Supra* ¶ 28. With all due respect to the majority, "[t]he courts *** have no business weighing the merits of the grievance." *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960). Here, since the grievances expressly allege violations of the CBA and are not expressly excluded from arbitration, the portions of the grievances concerning those violations are arbitrable.

¶ 64                                    II. Arbitration Under Section 10(b)

¶ 65    I also disagree with the majority's conclusion that the portions of the grievances alleging violations of the CBA are inarbitrable under section 10(b) of the Act. *Chicago Teachers Union*, 344 Ill. App. 3d at 636 ("An educational employer is not required to arbitrate a dispute that it did not contractually agree to arbitrate or that is not arbitrable under section 10(b) [citation] of the Act."). Under section 10(b):

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." 115 ILCS 5/10(b) (West 2010).

"This statute precludes the parties from implementing a provision in a collective-bargaining agreement if it would be in violation of, or inconsistent or in conflict with other Illinois statutes." *Staunton*, 200 Ill. App. 3d at 378. On appeal, the Board claims that finding the grievances arbitrable would conflict with section 4 of the Act and section 34-84 of the School Code (105 ILCS 5/34-84 (West 2010)). However, the Board did not raise its argument concerning section 34-84 of the School Code before the IELRB, so I would not consider it for the first time on appeal. See *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002) ("As a general rule, issues or defenses not raised before the administrative agency will not be considered for the first time on administrative review."); *Staunton*, 200 Ill. App. 3d at 379 ("We will not address this issue as it was not decided by the [IELRB]."). Thus, I consider only whether finding the portions of the grievances alleging violations of the CBA arbitrable would conflict with section 4 of the Act.

¶ 66     Under section 4, "[e]mployers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees and direction of employees." 115 ILCS 5/4 (West 2010). The Board argues that it is only required to arbitrate a decision if it is required to bargain over it and, since section 4 provides that it is not required to bargain over its decision not to rehire probationary teachers, it cannot be required to arbitrate the issue. I do not find this argument persuasive.

¶ 67     "Section 4 does not apply to this case. The statute addresses bargaining, not arbitration." *Staunton*, 200 Ill. App. 3d at 379. While, as the Board notes, arbitration is part of the bargaining process, section 4 only addresses whether certain subjects are mandatory subjects of bargaining. Section 4 does not in any way indicate that the issues contained in the grievances in the case at bar are *prohibited* subjects of bargaining, which would also prohibit them from being arbitrated. See *Chicago Teachers Union, Local 1 v. Chicago School Reform Board of Trustees*, 338 Ill. App. 3d 90, 97 (2003) ("A prohibited subject of bargaining cannot be arbitrated."). Thus, I fail to see the relevance of a section 4 analysis to the question presented here, which is whether the grievances are arbitrable. Accordingly, I cannot find that section 4 of the Act renders the instant grievances inarbitrable.

¶ 68     As a final matter, I note that in its reply brief, the Board makes the argument that "[a]rbitrating the placement of documents in a non-employee's personnel file would be a meaningless waste of time." As noted, "[t]his court's opinion of the merits of the grievance is immaterial. [Citation.] The issue of whether the law requires arbitration must be kept separate from an analysis of the merits of the underlying claim. A court should not rule on or be influenced by the merits of the dispute. This holds true even if one party's underlying claim is frivolous. [Citation.]" *Rock Island County Sheriff*, 339 Ill. App. 3d at 298. As the United States Supreme Court has stated, "[t]he agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the ***

environment may be quite unaware." *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960). The fact that the Board may consider the issue to be "a meaningless waste of time" does not have any effect as to whether the claim is arbitrable.

¶ 69      Accordingly, I must dissent from the majority's conclusion that the instant grievances are inarbitrable. Again, to make it absolutely clear, there is no dispute that the Board has the sole authority to decide whether to rehire the teachers. However, the portions of their grievances alleging violations of the CBA are arbitrable, and accordingly, I would confirm the IELRB's decision.